No. 13018

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

GYRION CONSTRUCTION CO., INC.,

Plaintiff and Respondent,

-vs-

ROBERT J. SANDERS,

Defendant and Appellant.

---

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

H. James Oleson argued, Kalispell, Montana

For Respondent:

Hash, Jellison and O'Brien, Kalispell, Montana
Kenneth E. O'Brien argued, Kalispell, Montana

---

Submitted:   September 8, 1975

Decided:   OCT 20 1975

Filed:   OCT 20 1975

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Flathead County, in favor of plaintiff Gyrion Construction Co., Inc. in the amount of $1,200.

On February 17, 1971, the residence of defendant Robert J. Sanders suffered extensive fire damage. Sanders' insurance agent proceeded to adjust the loss. In view of the cold weather and the need for immediate repair of the residence, the adjustor contacted plaintiff, a contractor, with the consent of Sanders. On February 18, 1971, Gyrion began restoration work on the Sanders home. Sanders testified that he was under the impression that Gyrion had been hired by the adjustor, but the district court found that Sanders, by allowing Gyrion to begin work on his home, had in fact hired Gyrion.

At the time of the fire the Sanders home was insured for a maximum $20,000 fire loss. Because the extent of damage to the home was unknown until torn down, no estimates were made or requested. At the time Gyrion was employed all parties believed the entire cost of repair would be under the maximum fire loss coverage. Gyrion agreed to repair the fire damage on the basis of cost of labor and materials plus 15%. It also agreed that Sanders could perform work on the residence and be credited by Gyrion for that work.

Sanders testified that as work progressed he informed Gyrion not to exceed the $20,000 limit. Gyrion denied this. The district court made no finding on Sanders' alleged general limitation of cost, but did find that prior to the painting of the premises Sanders had notified Gyrion that any painting should be done by Gyrion only if the painting would come within the maximum coverage of the policy.

The repair work was completed on about April 30, 1971. During the period of repairing the home Sanders on several occasions, together with his wife, requested information as to the amount and cost of the repairs. However Gyrion failed to furnish any itemized list or accounting of expenses until November 1971. A draft from the insurance carrier in the amount of $20,000 was delivered to Sanders in June 1971, who immediately endorsed it and delivered it to Gyrion.

When Gyrion finally did send the bill, it exceeded the maximum insurance coverage ($20,000) in the amount of $4,284.69. Sanders was credited with the sum of $939.55 for labor performed by him, and was also given certain other unspecified credits, leaving a balance claimed by plaintiff of $2,914.71, as due and owing over and above the $20,000 insurance coverage.

The district court found on a quantum meruit basis that plaintiff was entitled to $1,200 as the reasonable value of the painting, and costs.

Defendant appeals and plaintiff crossappeals.

A portion of the district court's opening statement and response by both counsel defines the issue tried to the court:

> "THE COURT: * * * The issue to be determined here is whether or not any work done in excess of the insurance coverage was by agreement and understanding of the parties to be covered by the fire insurance maximum limits, or if any additional amount was to be paid by the Defendant. Now is that a correct statement of the issues?
>
> "MR. O'BRIEN: Your Honor, I believe that is a correct statement of the issues as we discussed them, I believe, in Chambers, that there is no quarrel as to the amount of work that was done, the issue is whether or not the Defendant was liable to pay for it or whether there was a $20,000 limit on the sum the Plaintiff was to receive.
>
> "MR. OLESON: That is correct, with what Mr. O'Brien just stated.
>
> "THE COURT: Very well, let the record show and on that basis, call your first witness."

A portion of the court's finding of fact No. 3, finds:

"That plaintiff agreed to repair said home from the fire loss on the basis of cost of labor and materials plus 15%."

Its finding of fact No. 7 states:

"That prior to installation of certain bathroom fixtures, and prior to the painting of said premises, the defendant had notified the plaintiff that any painting should be done by the plaintiff only if the same would come within the maximum coverage of said policy."

The court's finding No. 12 sets forth:

"That the billing exceeded the maximum insurance coverage in the amount of $4,284.69. That defendant was credited with the sum of $939.55 for work and labor performed as carried on plaintiff's records. That in addition thereto, defendant was given certain other credits, leaving a balance claimed by the plaintiff of $2,914.71 as due and owing, and the amount over and above the maximum $20,000 fire loss coverage."

The district court then made these conclusions of law:

"2. That in view of the circumstances, plaintiff and defendant did not have an express or implied contract for any definite amount, nor could any such contract have been entered into.

"3. That all costs in excess of policy limits were for reasonable and necessary materials and labor; but that the plaintiff is entitled to be paid on a quantum meruit basis. That the defendant would be unjustly enriched if he were permitted to enjoy the result of all of such services and labor without paying a reasonable and necessary sum for same. That a reasonable value of the painting on a quantum meruit basis is the sum of $2,139.55. That defendant is entitled to the work and labor performed by the defendant for plaintiff of $939.55, leaving an amount due and owing plaintiff by defendant of the sum of $1,200."

The parties agree that plaintiff proceeded to work under a cost plus contract for material and labor plus 15%. The district court so found in its finding No. 3. Then, the court found in its finding No. 7 that plaintiff had been notified by defendant not to do the painting if it would increase the cost in excess of policy limits. The court further found in its finding No. 12 that defendant had been given all credits due him by plaintiff's records and reduced the billing from $4,284.69 to $2,914.71. The amount $2,914.71 was in excess of the policy limit.

- 4 -

The court's conclusion of law No. 2 seems to say, in view of the issue being tried, that there was no top amount on the cost plus contract. The last phrase of conclusion of law No. 2, as to the possibility of such a contract, seems to be surplusage as it would certainly have been possible to restrict the contract to a total sum of $20,000.

Conclusion of law No. 3 flies in the face of the findings of the court. We cannot apply quantum meruit to all costs in excess of the insurance coverage because it has been determined that the parties have a contract [cost plus 15%] with no agreed upper limit. We cannot now imply a contract by law. A recovery on the theory of quantum meruit (which simply means "as much as he deserves") is based on a contract implied in law or quasi-contract. The obligation in such a contract arises not from consent of the parties but from the law of natural justice and equity, and is based on the doctrine of unjust enrichment. Brown v. Thornton, 150 Mont. 150, 156, 432 P.2d 386.

The trial court found in its finding No. 7, that plaintiff was specifically instructed by defendant not to paint the premises if the cost would overrun the $20,000 insurance coverage. There can be no contract implied by law as to the painting, under the present findings of the trial court.

We are unable to determine from the record before this Court the amount, excluding the painting, of the general contract overrun which should be paid in full by defendant. The record does not reveal whether or not the $939.55 plus $330.43 credits given to defendant by plaintiff should properly be applied to reduce the cost of painting or the general construction contract, or both. Therefore we cannot reform the judgment here.

The judgment of the district court is reversed with instructions to recalculate the amount of the judgment in con-

- 5 -

formity with this opinion. This may be done by a hearing by the district court or a new trial, whichever in the discretion of the trial judge is required.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____
_____
_____
        Justices.

- 6 -